UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| RICHARD COLLINS | : | CIVIL ACTION |
|---|---|---|
| vs. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO.: 16-cv-5671 |

## ORDER

**AND NOW**, this          day of                  , 2017, upon consideration of Defendants' Motion for Summary Judgment and Plaintiff's response thereto, it is hereby **ORDERED** that said Motion is **DENIED**.

BY THE COURT:

_____
J.

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD COLLINS | : | CIVIL ACTION |
| vs. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO.: 16-cv-5671 |

**PLAINTIFF'S ANSWER TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**

**TO THE HONORABLE, THE JUDGES OF THE SAID COURT:**

Plaintiff, Richard Collins, by and through his counsel, Michael I. McDermott, Esquire, hereby answers Defendants' Motion for Summary Judgment:

Pursuant to Local Rule 7.1© Plaintiff hereby incorporates by reference the attached Plaintiff's Answer to Defendants' Statement of Undisputed Facts in Support of Their Motion for Summary Judgment.

Respectfully submitted:

*/s/ Michael I. McDermott/*

Michael I. McDermott, Esquire
Identification No.: 52917
Attorney for Plaintiff
1026 Winter Street, Suite 200
Philadelphia, PA 19107
(215) 925-9732

Date: June 26, 2017

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD COLLINS | : | CIVIL ACTION |
| vs. | : | |
| CITY OF PHILADELPHIA, et al. | : | NO.: 16-cv-5671 |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S ANSWER TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

**TO THE HONORABLE, THE JUDGES OF THE SAID COURT:**

Plaintiff, Richard Collins, by and through his counsel, Michael I. McDermott, Esquire, hereby answers Defendants' Motion for Summary Judgment, and in support thereof, avers as follows:

**I.   STATEMENT OF FACTS:**

On March 23, 2013 at approximately 7:55 p.m., plaintiff, Richard Collins was sitting in his car at 7500 Torresdale Avenue, Philadelphia, PA attempting to make a phone call to Crystal Hannah for directions to her house. Plaintiff's Deposition Transcript, p. 34, a true and correct copy of which is attached hereto as Exhibit "A". While attempting to make the telephone call, a police vehicle, a Ford Explorer passed the plaintiff's car, made a U-turn and came back towards the plaintiff's car with the spot light shining on plaintiff's face. The officers got out of the police vehicle approached his car and one the police officers (defendant, Sergeant Edward Pisarek) placed his hand on the plaintiff's chest and asked him why his heart was beating so fast. The plaintiff told him because he was nervous because he was on state parole. Suddenly, plaintiff's

car was surrounded by marked and unmarked police vehicles. Plaintiff's Deposition Transcript, pp. 34-36.

The plaintiff was pulled from his vehicle and held by his hands behind his back by defendant, Police Officer Michael Berkery without explanation. Defendant, Sergeant Pisarik then whistled to Berkery while making a circular motion with his finger and Berkery handcuffed the plaintiff. Pisarik then approached the plaintiff, pointed at him and told him that he robbed three people in the past and that he knows the plaintiff did this robbery. The plaintiff denied committing any robbery and told the Sergeant that he was just at the bank and has hot coffee in his car from Duncan Donuts and the receipts are in his car. Plaintiff's Deposition Transcript, pp. 36-38. Sergeant Pisarik refused to search the plaintiff's car to find the receipts that plaintiff was describing claiming that the car was messy and looked like an abandoned car. Sergeant Edward Pisarik's Deposition Transcript, p. 17, a true and correct copy of which is attached hereto as Exhibit "B". In the car were two receipts from the PNC bank located at 2401 Wels Road, Philadelphia, PA showing withdraws at 7:45 and 7:46 p.m., which was the time of the robbery at Red Sun Food Market located at 4552 Cottman Avenue, Philadelphia, PA. Further, PNC bank surveillance video proves that the plaintiff was at the bank. See PNC bank receipts, Copies of which are attached hereto as Exhibit "C", PNC bank video footage, which is being forwarded under separate cover as Exhibit "D" and Plaintiff's Deposition Transcript, pp. 30-32.

Plaintiff observed the police search his car but he didn't see them remove anything. Meanwhile they had him cuffed and sitting in a Ford Explorer. Later, they pulled him out of the Ford Explorer and sat him on a curb. Another Ford Explorer came to where he was and the police, two on each side of him, pulled him up and walked him towards the Explorer to be identified by the owner of the store that was robbed. After a couple minutes, the Asian owner (a

cross-racial identification) identified him as the robber. Plaintiff's Deposition Transcript, pp. 38-39.

At the time of the plaintiff's arrest he was wearing a grey hoodie, jeans and blue Nike sneakers. See the 75-229, Biographical Information Sheet, a true and correct copy of which is attached hereto as Exhibit "E".

Approximately twelve minutes before the plaintiff was accosted by the police, a gun point robbery took place at the Red Sun Food Market located at 4552 Cottman Avenue. The owner, Xiu Mei Xiao, who was working the register at the time described the perpetrator as a white male with a beard wearing a tan coat. See Xiu Mei Xiao's interview, p.2 a true and correct copy of which is attached hereto as Exhibit "F".

According to Police Officer Apostolou the flash information, which came from the complainant, Xiu Mei Xiao indicated a white male wearing tan coat with fur around the hood, armed with a black gun. Detective Scott's Deposition Transcript, pp. 45-48, a true and correct copy of which is attached hereto as Exhibit "G".

According to Police Officer Michael Berkery the flash information indicated a white male, approximately six feet, green eyes, black jacket with fur on the hood and blue jeans. See the Philadelphia Police Interview, 75-483 of Officer Berkery, a true and correct copy of which is attached hereto as Exhibit "H" and Detective Scott's Deposition Transcript, pp. 29-30. However, this flash information is different from the Philadelphia Police Department Vehicle or Pedestrian Investigative Report prepared by Police Officer Michael Berkery, which indicates the flash information was grey hoodie, black jacket with fur on hood and blue jeans. See Philadelphia Police Department Vehicle or Pedestrian Investigative Report, a true and correct copy of which is attached hereto as Exhibit "I" and Sergeant Edward Pisarik's Deposition Transcript, p. 8.

**Police Officer Berkery made up the flash information he put into the Philadelphia Police Department Vehicle or Pedestrian Investigative Report to fit what the plaintiff was wearing.**

The robbery of the store was captured on video, which Sergeant Pisarik watched before his deposition and admits that because the perpetrator was wearing a parka you could not see if he was wearing a grey hoodie under the parka indicating further that officer Berkery was placing false information into his reports. Sergeant Edward Pisarik's Deposition Transcript, p. 14. **There was never any flash information regarding a grey hoodie until Officer Berkery made it up in order to create probable cause to stop the plaintiff.**

The Philadelphia Police Department Vehicle or Pedestrian Investigative Report indicates that the type of stop of plaintiff was a pedestrian stop. However, this was not the case, the plaintiff was in a motor vehicle. Sergeant Pisarik and Officer Berkery could only see the plaintiff from the shoulders up and could not see what he was wearing. Sergeant Edward Pisarik's Deposition Transcript, p. 8. Sergeant Pisarik testified that they approached the plaintiff because he ducked down in his car. He also admitted that other white males were being stopped. Sergeant Edward Pisarik's Deposition Transcript, pp. 8-10.

The police recovered the video of the robbery at the Red Sun Food Market located at 4552 Cottman Avenue and Detective Scott along with other police officers viewed the video of the incident on the night of the robbery while at the store. A true and correct copy of the video is being forwarded aunser separet cover as Exhibit "J" and Scott Deposition Transcript, p. 33. In the video you could see the perpetrator's sneakers and Detective Scott took a picture of the sneakers the plaintiff was wearing, which are clearly not the sneakers the perpetrator was wearing, a true and correct copy of which is attached hereto as Exhibit "K". Despite this

knowledge Detective Scott reported and testified that they were the same sneakers. See Red Sun Food Market's surveillance video, photograph of plaintiff's sneakers and Detective Keith Scott's Deposition Transcript, pp. 18-20. **A review of the video and the sneakers clearly shows that they are not the same.**

**The plaintiff was arrested on March 23, 2017 and charged with various crimes. The charges against the plaintiff were dismissed on August 7, 2017. The two year Statute of Limitations began to run on August 6, 2017. Plaintiff filed the instant action on August 8, 2016, a Monday.**

### PROCEDURAL HISTORY:

Plaintiff agrees with the procedural History given by the defendants with the exception of the last line that the plaintiff's claims fail as a matter of law.

### II. ISSUES PRESENTED:

1. Whether plaintiff's 4th Amendment claims and state false arrest claims fail?

**SUGGESTED ANSWER: No.**

1a. Whether Police Officer Michael Berkery and Sgt. Edward Pisarek's arrest of plaintiff was made with probable pause based on an eye witness's allegations, which were sufficient to warrant a reasonable person to believe an offense had been committed by plaintiff?

**SUGGESTED ANSWER: No.**

1b. Whether Plaintiff's Complaint relating to claims against Police Officer Michael Berkery, Detective Keith Scott and Sgt. Edward Pisarek are entitled to Qualified Immunity?

**SUGGESTED ANSWER:** No.

2. Whether Plaintiff's claims are barred by the Statute of limitations?

**SUGGESTED ANSWER:** No.

3.  Whether Plaintiff's claims under the Pennsylvania Constitution fail?

**SUGGESTED ANSWER:** No.

## III. LEGAL ARGUMENT:

Plaintiff's complaint consists of claims under 42 U.S.C. section 1983 for false arrest and malicious prosecution. "To establish a claim under section 1983, a plaintiff must allege (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under color of state law." Lake v. Arnold, 112 F.3d 682,689 (3d Cir. 1987).

"Acting under color of law" means "under pretense of law," and simply means acting in one's capacity as a police officer. The plaintiff does not have to prove that the defendant was acting within the law, if he was acting in his capacity as a police officer, then he was acting under color of law. See Police Misconduct: Law and Litigation November 2016 Update, By Michael Avery, David Rudovsky, Karen M. Blum, and Jennifer Laurin Chapter 12. Jury Instructions, § 12:5. General instructions—Color of law (contested)

Harlow v. Fitzgerald held "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818 (1982).

Further, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously been held unlawful…; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 438 U.S. 635, 640 (1987). When determining whether a government official is shielded by qualified immunity, "the salient question…is whether the state

of the law [at the time of the conduct] gave respondents fair warning that their [conduct] was unconstitutional." Hope v. Pelzer, 535 U.S. 730, 741 (2002).

According to *Hope*, unlawfulness can be apparent "even in novel factual circumstances." *Id.*; *see also* Groh v. Ramirez, 540 U.S. 551, 564 (2004) ("No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."); Halsey v. Pfeiffer, 750 F.3d 273, 296 (3d Cir. 2014) (holding that even though it had not previously decided on the viability of a stand-alone claim for fabrication of evidence, reasonable officers should have known that "they certainly could not fabricate inculpatory evidence"); Carman v. Carroll, 749 F.3d 192 (3d Cir. 2014).

These last three paragraphs come directly from the Comment and Footnote of FEDCIV-JI3C 4.7.2, Model Civ. Jury Instr. 3rd Cir. 4.7.2 (2015), Chapter 54. Instructions for Civil Rights Claims Under Section 1983—Affirmative Defenses—Qualified Immunity:

> The claim that is most often asserted against police is false arrest. Persons bringing this claim assert that police violated their Fourth Amendment right against unreasonable seizure. If the officer had probable cause to believe the individual had committed a crime, the arrest without a warrant for a felony or misdemeanor committed in their presence. (Some states allow warrantless arrests for misdemeanor domestic assaults not committed in the officer's presence). Even if the information the officer relied upon later turns out to be false, the officer is not liable if he believed it was accurate at the time of arrest. To prevail on a false arrest claim, the victim must show that the arresting officer lacked probable cause,

that is, facts sufficient to cause a reasonable person to believe that a crime has been committed.

Probable cause exists for an arrest when, at the time of the arrest, the facts and circumstances are "sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Sharrar v. Felsing. 128 F.3d 810, 817 (3d Cir. 1997). Probable cause need only exist as to any offense that could be charged under the circumstances. Graham v. Conner, 490 U.S. 386, 393 n. 6 (1989). In determining whether probable cause exists, the court should assess whether the objective facts available to the arresting officers at the time of the arrest were sufficient to justify a reasonable belief that an offense had been committed. Sharrar, 128 F.3d at 817. Courts apply a common sense approach based on the totality of the circumstances. Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir, 2000).

The facts in the instant action do not constitute probable cause to arrest. The Philadelphia Police Department Vehicle or Pedestrian Investigative Report indicates that the type of stop of plaintiff was a pedestrian stop. However, this was not the case, the plaintiff was in a motor vehicle. Sergeant Pisarik and Officer Berkery could only see the plaintiff from the shoulders up and could not see what he was wearing. Sergeant Edward Pisarik's Deposition Transcript, p. 8. Sergeant Pisarik testified that they approached the plaintiff because he ducked down in his car. He also admitted that other white males were being stopped. Sergeant Edward Pisarik's Deposition Transcript, pp. 8-10. The police were simply stopping any white male without reasonable suspicion or probable cause.

The complainant, Xiu Mei Xiao's description of the perpetrator indicated a white male wearing tan coat with fur around the hood, armed with a black gun. Detective Scott's Deposition

Transcript, p. 45-48. The complainant only identified the plaintiff because of the suggestive nature of the identification. The police pulled him out of the Ford Explorer and sat him on a curb. Another Ford Explorer came to where he was and the police, two on each side of him, pulled him up and walked him towards the Explorer to be identified by the owner of the store that was robbed. After a couple minutes, the Asian owner (a cross-racial identification) identified him as the robber. Plaintiff's Deposition Transcript, pp. 38-39. Further a review of the video illustrates that the complainant could not see the perpetrator's face, which is why her description of the perpetrator was so non-descriptive. The robbery of the store was captured on video, which Sergeant Pisarik watched before his deposition and admits that because the perpetrator was wearing a parka you could not see if he was wearing a grey hoodie under the parka indicating further that officer Berkery was placing false information into his reports.

Identification procedures conducted during the investigation of a criminal case must conform to standards of fundamental fairness. An identification violates the requirements of due process of law if it was obtained in a manner so impermissibly suggestive as to give rise to substantial likelihood of mistaken identification. Improperly suggestive procedures include coercing a witness to identify a particular suspect and displaying photos in a manner that suggests an officer desires the witness to select a particular photo. If a defendant obtained an identification of a plaintiff in an impermissible suggestive manner, you may hold the defendant liable for manufacturing evidence See Police Misconduct: Law and Litigation November 2016 Update, By Michael Avery, David Rudovsky, Karen M. Blum, and Jennifer Laurin Chapter 12. Jury Instructions, § 12:28. Obtaining identifications through suggestive methods.

According to Police Officer Apostolou the flash information, which came from the complainant, Xiu Mei Xiao indicated a white male wearing tan coat with fur around the hood, armed with a black gun. Detective Scott's Deposition Transcript, p. 45-48.

According to Police Officer Michael Berkery the flash information indicated a white male, approximately six feet, green eyes, black jacket with fur on the hood and blue jeans. See the Philadelphia Police Interview, 75-483 and Detective Scott's Deposition Transcript, pp. 29-30. However, this flash information is different from the Philadelphia Police Department Vehicle or Pedestrian Investigative Report prepared by Police Officer Michael Berkery, which indicates the flash information was grey hoodie, black jacket with fur on hood and blue jeans. See Philadelphia Police Department vehicle or Pedestrian Investigative Report and the flash information was grey hoodie, black jacket with fur on hood and blue jeans. Sergeant Edward Pisarik's Deposition Transcript, p. 8. **Police Officer Berkery made up the flash information he put into the Philadelphia Police Department Vehicle or Pedestrian Investigative Report to fit what the plaintiff was wearing.**

Where a person has been deprived of liberty as a result of false evidence that is manufactured by law enforcement officers, there is a deprivation of liberty without due process of law. "Evidence" refers not only to physical evidence, but also to testimony by witnesses. See Police Misconduct: Law and Litigation November 2016 Update, By Michael Avery, David Rudovsky, Karen M. Blum, and Jennifer Laurin Chapter 12. Jury Instructions, § 12:25. Manufacturing Evidence.

The robbery of the store was captured on video, which Sergeant Pisarik watched before his deposition and admits that because the perpetrator was wearing a parka you could not see if he was wearing a grey hoodie under the parka indicating further that officer Berkery was placing

false information into his reports. Sergeant Edward Pisarik's Deposition Transcript, p. 14. **There was never any flash information regarding a grey hoodie until Officer Berkery made it up in order to create probable cause to stop the plaintiff.**

The actions of the police officers were clearly unreasonable and lacked common sense. Officer Berkery included false information in his report.

In the car were two receipts from the PNC bank located at 2401 Welsh road, Philadelphia, PA showing withdraws at 7:45 and 7:46 p.m., which was the time of the robbery at Red Sun Food Market located at 4552 Cottman Avenue, Philadelphia, PA. Further, surveillance PNC surveillance video proves that the plaintiff was at the bank. See PNC bank receipts, PNC bank video footage and Plaintiff's Deposition Transcript, pp. 30-32. Sergeant Pisarik refused to search the plaintiff's car to find the receipts that plaintiff was describing claiming that the car was messy and looked like an abandoned car. Sergeant Edward Pisarik's Deposition Transcript, p. 17.

A law enforcement officer is constitutionally required to promptly furnish material exculpatory information in his possession to the prosecutor's office. If you find that an officer knowingly and willfully ignored material exculpatory evidence and failed to promptly furnish it to the prosecutor in the criminal case against the plaintiffs, then you should find that the officer violated the plaintiff's constitutional rights. See Police Misconduct: Law and Litigation November 2016 Update, By Michael Avery, David Rudovsky, Karen M. Blum, and Jennifer Laurin Chapter 12. Jury Instructions, § 12:30. Officer's obligation to furnish exculpatory evidence to prosecutor.

How could they not have doubted the witness' statements when there was no physical evidence of any alleged crime. The officers even searched the surrounding area and did not

locate the grate and/or cart. Qualified Immunity does not shield the police in the instant action. Qualified Immunity only shields police when "a reasonable officer could have believed (the arrest) to be lawful, in light of clearly established law and the information the officers possessed." Anderson v. Creighton, 483 U.S. 635(1987).

Plaintiff has established a genuine issue of material fact as to the existence of probable cause to make an arrest.

**Statute of Limitations:**

The plaintiff was arrested on March 23, 2017 and charged with various crimes. The charges against the plaintiff were dismissed on August 7, 2017. The two year Statute of Limitations began to run on August 6, 2017. Plaintiff filed the instant action on August 8, 2016, a Monday.

The cause of action did not accrue until August 6, 2014 when the underlying criminal matter was dismissed in plaintiff's favor and so the Statute of limitations did not begin to run until that date. See Harding v. Galceran, 802 F.2d 906 (9th Cir. 1989).

## IV. CONCLUSION:

Based on the forgoing, plaintiff respectfully requests that this court deny the Defendants' Motion for Summary Judgment.

Respectfully submitted:

*Michael I. McDermott*

Michael I. McDermott, Esquire
Identification No.: 52917
Attorney for Plaintiff
1026 Winter Street, Suite 200
Philadelphia, PA 19107
(215) 925-9732

Date: June 26, 2017

## **VERIFICATION**

I, Michael I. McDermott, Esquire, attorney for plaintiff, hereby verify that the statements set forth herein are true and correct, to the best of my knowledge, information and belief.

The foregoing statements are made subject to the penalties of 18 P.A.C.S. §4904 relating to unsworn falsification to authorities.

Dated: June 26, 2017

_Michael I. McDermott_
Michael I. McDermott, Esquire

# PROOF OF SERVICE

I hereby certify that on June 26, 2017, a copy of the foregoing was filed electronically. Notice of the filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system:

Service by electronic filing to:

Aaron Shotland, Esquire
Assistant City Solicitor
City of Philadelphia Law Department
1515 Arch Street
5th Floor,
Philadelphia, PA 19102

*Michael I. McDermott*
Michael I. McDermott, Esquire
Attorney Identification No.: 52917
Attorney for Plaintiff
1026 Winter Street
Suite 200
Philadelphia, PA 19107
(215) 925-9732

Date: June 26, 2017