EXHIBITS "B"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

RICHARD COLLINS,          :  CIVIL ACTION
                     :
       Plaintiff,  :
                     :
     vs.           :  **ORIGINAL**
                     :
CITY OF PHILADELPHIA,  :
et al.,             :
                     :
     Defendants.  :  NO. 16-5671

- - -

Oral deposition of SERGEANT EDWARD PISAREK, taken at the City of Philadelphia Law Department, One Parkway Building, 1515 Arch Street, 14th Floor, Philadelphia, Pennsylvania, on Thursday, April 13, 2017, commencing at 2:10 p.m., before Andrea M. Brinton, Certified Court Reporter and Notary Public.

- - -

SUMMIT COURT REPORTING, INC.
Certified Court Reporters and Videographers
1500 Walnut Street, Suite 1610
Philadelphia, Pennsylvania 19102
424 Fleming Pike, Hammonton, New Jersey 08037
(215) 985-2400 * (609) 567-3315 * (800) 477-8648
www.summitreporting.com

**SERGEANT EDWARD PISAREK**

```
 1   APPEARANCES:

 2   LAW OFFICES OF MICHAEL I. McDERMOTT
     BY:  MICHAEL I. McDERMOTT, ESQUIRE
 3   1026 Winter Street
     Suite 200
 4   Philadelphia, Pennsylvania 19107
     (215) 925-9732
 5   Counsel for Plaintiff

 6   CITY OF PHILADELPHIA LAW DEPARTMENT
     BY:  AARON SHOTLAND, ESQUIRE
 7   One Parkway
     1515 Arch Street
 8   14th Floor
     Philadelphia, Pennsylvania 19102
 9   (215) 683-5000
     Counsel for Defendants
10
     ALSO PRESENT:
11   Richard Collins

12

13

14

15

16

17

18

19

20

21

22

23

24
```

**SERGEANT EDWARD PISAREK**

1                                    I N D E X

2     WITNESS                                              PAGE

3     SERGEANT EDWARD PISAREK

4     EXAMINATION

5          By Mr. McDermott                                    4

6

7                              - - -

8

9                          E X H I B I T S

10    EXHIBIT NO.    DESCRIPTION              PAGE FIRST
                                             REFERENCED

11                   (Previously Marked Exhibits.)

12    Collins-1      Photocopy of Photograph        13

13    Scott-3        Photocopy of Photograph        15

14                              - - -

15

16

17

18

19

20

21

22

23

24

```
 1
 2              (By agreement of counsel, the reading,
 3   signing, sealing, certification and filing are
 4   waived; and all objections, except as to the form of
 5   the question, are reserved until the time of trial.)
 6                   - - -
 7              SERGEANT EDWARD PISAREK, after having
 8   been previously sworn, was examined and testified as
 9   follows:
10                   - - -
11                   EXAMINATION
12                   - - -
13   BY MR. McDERMOTT:
14        Q.   Sergeant, good afternoon.
15        A.   Good afternoon.
16        Q.   Thank you for putting up with this.
17        A.   I'm making overtime.
18        Q.   With regard to my client, Mr. Collins, do
19   you recall being involved in his arrest?
20        A.   Yes.
21        Q.   Okay.  And you were working with a partner
22   that night?
23        A.   I don't have a partner.  I ride -- I'm a
24   supervisor.  I was in -- at the time, though, I was
```

**SERGEANT EDWARD PISAREK**

| | |
|---|---|
| 1 | in the vehicle with Michael Berkery, Officer Berkery. |
| 2 | I don't know why -- |
| 3 | Q. Okay. So -- |
| 4 | A. I don't know why we were in the vehicle |
| 5 | together. I don't know if we were coming from |
| 6 | somewhere, I can't tell you, but we responded to this |
| 7 | because we were close by. |
| 8 | Q. Okay. So you were with him -- |
| 9 | A. I was in the vehicle. |
| 10 | Q. -- for whatever reason in a marked police |
| 11 | unit? |
| 12 | A. Right, I wasn't -- but we weren't partners, |
| 13 | we were -- I just happened to be in the vehicle with |
| 14 | him briefly -- |
| 15 | Q. Okay. |
| 16 | A. -- and this happened. |
| 17 | Q. And were you driving the vehicle, if you |
| 18 | recall? |
| 19 | A. I don't recall. |
| 20 | Q. Okay. Do you recall seeing my client? |
| 21 | A. Yes. |
| 22 | Q. Where was he when you saw him? |
| 23 | A. Seventy -- Torresdale and Oakmont, 7500 |
| 24 | block of Torresdale right in between Oakmont and |

**SERGEANT EDWARD PISAREK**

1   Sheffield, I want to say.  I'm not quite sure of the

2   cross streets there, but in that area.

3       Q.    What was he doing when you saw him?

4       A.    He's parked on a corner.  As we came by, he

5   ducked down -- dipped down in the vehicle.

6       Q.    Okay.  So he was inside a vehicle?

7       A.    That's correct.

8       Q.    Okay.  I want to show you what has been

9   marked as Scott-5.  Do you recognize what Scott-5 is?

10      A.    This is -- someone prepared a 75-48A for a

11  stop.

12      Q.    Okay.  By saying that, I'm taking it that

13  you're not the person who prepared it?

14      A.    I did not prepare this, no.

15      Q.    Okay.  And do you know who did?  Does it --

16  does the report state?

17      A.    It says right here.  It says report

18  prepared by Berkery.

19      Q.    Okay.  So I wanted to show you something in

20  it.  They have different boxes, and at the top it

21  says type of stop --

22      A.    Uh-huh.

23      Q.    -- and it's marked off pedestrian.

24      A.    That's exactly what it was.

1   Q.   Okay.  Well, if he's in a motor vehicle,

2   why is it marked off as pedestrian?

3       A.   The vehicle was not running and he was in

4   the vehicle, the vehicle was not moving, which would

5   not make it a vehicular stop for any type of -- for

6   it to be a vehicular stop, it would have to be some

7   type of vehicular infraction.  He was stopped as a

8   pedestrian.

9       Q.   The report, from your understanding, the

10  way that it's filled out, is Philadelphia Police

11  procedure?

12      A.   Yes, that would be why he filled it out

13  that way, but you would have to ask him.  That's the

14  way I would fill it out.

15      Q.   Okay.  But, in fact --

16      A.   He wasn't moving in the vehicle.

17      Q.   He was inside a vehicle, so he wasn't

18  standing up?

19      A.   No.

20      Q.   He wasn't on the sidewalk?

21      A.   No.  He actually dipped down in the car.

22      Q.   Okay.  So was the car door closed or

23  opened?

24      A.   I don't recall.

**SERGEANT EDWARD PISAREK**

1  Q.  Okay.  So you couldn't see what color his

2  pants were as you drove by?

3  A.  I don't know.

4  Q.  Okay.  Well, do you recall?

5  A.  I don't -- what do I recall?  That's a

6  broad question.

7  Q.  No, I'm asking do you recall whether you

8  could see his pants or not?

9  A.  I don't recall.

10  Q.  Okay.  Could you see what kind of coat he

11  was wearing?

12  A.  We could see from the shoulders up until he

13  dipped down in the vehicle.

14  Q.  Okay.  Were the lights on in the vehicle?

15  A.  I don't recall.

16  Q.  Okay.  Well, this is at night; right?

17  A.  Yes.  I believe it was on a very well-lit

18  corner and there are streetlights.

19  Q.  This is March -- it says date and time of

20  occurrence, March 23rd, 2013, 7:55 p.m.

21  A.  Correct.  We were right next to the

22  vehicle.

23  Q.  Okay.  You're right next to the vehicle?

24  A.  Correct.

**SERGEANT EDWARD PISAREK**

1       Q.    Okay.  And what about what you saw of him

2   in that time matched the flash information?

3       A.    The description of the white male in the

4   proximity of the area to where the robbery took

5   place, his actions trying to avoid us and dipping

6   down into the vehicle, we decided to do a pedestrian

7   investigation in reference to the robbery.

8       Q.    Now, what did you do?

9       A.    Can you be more specific, please?

10      Q.    You drive by, you see a white male, you

11  believe, slipping down.  What do you do?

12      A.    We stop the vehicle right next to his and

13  we exited the vehicle.

14      Q.    Okay.

15      A.    At that time, as we walked up next to him,

16  we noticed he was breathing heavily.

17      Q.    Okay.  And what did you do, ask him to get

18  out of the car?

19      A.    I believe -- Officer Berkery had most of

20  the contact with him.  I was -- I was there

21  basically -- obviously, as an officer at that point,

22  but as a supervisor on the scene.

23      Q.    Okay.  Why didn't you give any type of

24  report or interview following this?

**SERGEANT EDWARD PISAREK**

1    A.    I wasn't the arresting officer at the

2  scene.

3    Q.    You were not the arresting officer?

4    A.    No, sir.

5    Q.    So what did you do following this?  Did you

6  leave and go about your business as a supervisor?

7    A.    That's correct.  Officer Berkery went up

8  and prepared the information he needed to prepare, as

9  far as documents pertaining to the arrest, and I went

10 on the street, because I can't come off the street as

11 a supervisor.

12   Q.    When did you leave the area?

13   A.    I don't recall.

14   Q.    Okay.  Were you there when my client was

15 identified?

16   A.    I was.

17   Q.    And tell me what happened with the

18 identification.

19   A.    There were several people stopped in the

20 area, including ours.  We were waiting for the

21 complainant to be brought over to our location.

22 Before our -- the arrival at our location of the

23 complainant, there were several negative IDs.

24             Upon arriving on our location, I can't

**SERGEANT EDWARD PISAREK**

1  tell you who the officer was who had the complainant.

2  It was an Asian female in the back.  She stepped out

3  of the vehicle and she was adamant and started

4  yelling that that was him.

5      Q.    Where was my client?

6      A.    I don't recall.

7      Q.    Was he in his vehicle?

8      A.    At that time?  No, he was definitely out of

9  the vehicle.  I can't tell you where he was standing.

10      Q.    Was he in handcuffs?

11      A.    I don't recall.  We wouldn't handcuff him

12  until we get the actual positive ID, so my guess

13  would be he would have been standing at the back of

14  the vehicle.

15      Q.    Why would police paperwork not indicate

16  that other suspects were stopped and the complainant

17  brought to them to see if she could identify them?

18      A.    Because that's in reference to him and only

19  him.  That information is not pertinent to that.

20      Q.    To this --

21      A.    That's correct.

22      Q.    -- piece of paper?

23      A.    To that stop, correct.

24      Q.    But --

1    A.    It's not the whole case.  This is just in

2    reference to his stop, why he was stopped and that's

3    it.  This isn't part of an entire package of

4    discovery, as you would know.  The only thing -- any

5    other negative IDs in the area wouldn't go towards

6    discovery.

7              This is just a way of the City of

8    Philadelphia, the police department, to track who we

9    stopped; and, furthermore, that gets put into

10   evidence later.  The negative IDs would not be on

11   this at any point in the investigation.

12   Q.    And where in the investigation would

13   negative IDs be?

14   A.    That would be up to the detective to put

15   that into the 49 or whatever.

16   Q.    Okay.  So you --

17   A.    The 48A is specifically for that stop.

18   That's not --

19   Q.    You don't know --

20   A.    That's not for evidence, sir.

21   Q.    You don't know if that's in the discovery

22   or not?

23   A.    I can't tell you that, sir, I don't know.

24   Q.    Okay.  But as Philadelphia Police policy,

**SERGEANT EDWARD PISAREK**

1    it's supposed to be in the discovery?

2                    MR. SHOTLAND:  Objection.

3         What?

4    BY MR. McDERMOTT:

5         Q.    Police procedure in Philadelphia for

6    preparing discovery, you're familiar with it; right?

7         A.    Yes, of course.

8         Q.    And in an investigation, if there is other

9    negative identifications, is that supposed to be in

10   the discovery?

11        A.    I can't answer that.  I don't know.  You

12   could clearly pull the CAD from the -- if they

13   admitted the CAD, that's up to the detective.  I

14   don't know if that's policy per detectives, I've

15   never been one.

16        Q.    And you don't recall whether -- I'm sorry.

17   Take a look at what has been marked Collins-1.  Do

18   you recall seeing those sneakers on my client?

19        A.    That night?  I don't remember the sneakers

20   he was wearing, but, obviously, this was them.

21        Q.    Did you see the surveillance film that I

22   supplied to Mr. Shotland earlier today?

23        A.    About a half an hour ago.

24        Q.    I'm sorry?

**SERGEANT EDWARD PISAREK**

1    A.    Yes, about a half an hour ago.

2    Q.    Okay.  Did the person in the video that was

3 the perpetrator of the robbery, did he have a black

4 jacket on?

5    A.    I couldn't tell what the color of the

6 jacket was.  The color's not very good in the -- in

7 that video.

8    Q.    Could you see whether he had a hoodie on?

9    A.    Yeah, it was a -- like, a big parka jacket

10 with fur on the end of it.

11    Q.    But could you tell if he had a grey hoodie

12 on?

13    A.    Underneath the parka?

14    Q.    Yeah.

15    A.    You can't tell.

16    Q.    You can't tell?

17    A.    No.

18    Q.    So could you tell -- could you see the

19 sneakers?

20    A.    Yes.

21    Q.    In your opinion, did the sneakers in the

22 picture in front of you, Scott -- I'm sorry,

23 Collins-1, match the sneakers in the video?

24    A.    Yes, very similar to the sneakers in the

**SERGEANT EDWARD PISAREK**

1    video that I just watched --

2         Q.    Did the video?

3         A.    -- almost identical.

4         Q.    Did the sneakers in the video have white

5    soles?

6         A.    Yes.

7         Q.    They had white soles?

8         A.    Yes.

9         Q.    And how many times did you watch the video?

10                THE WITNESS:  How many times

11        did you play it?  Two, three times?

12                MR. SHOTLAND:  It's your

13        memory.

14                THE WITNESS:  Two or three

15        times.

16    BY MR. McDERMOTT:

17        Q.    In Scott-3, do you see that sneaker?

18        A.    That's just this part of the sneaker.  That

19    doesn't show the sneaker.

20        Q.    It shows that being red; correct?

21        A.    No, it says -- it shows -- that's not --

22                MR. SHOTLAND:  He's pointing to

23        the tongue of the sneaker.

24                THE WITNESS:  I can't tell.

**SERGEANT EDWARD PISAREK**

```
 1    BY MR. McDERMOTT:
 2         Q.    Yeah, the tongue of the sneaker.
 3         A.    I can't tell.  There could be some red in
 4    there, sure.
 5         Q.    Wait a second.  You're pointing in --
 6         A.    I don't understand.  Are you asking me --
 7         Q.    Hold on.  You're pointing in --
 8         A.    You're pointing from the sole to that.
 9         Q.    You're --
10                    MR. SHOTLAND:  Wait for his
11         question.
12    BY MR. McDERMOTT:
13         Q.    You're pointing in Scott-3 to what appears
14    to me to be a lightish red that you're saying in
15    Collins-1 is what's on the tongue?
16         A.    Yes, that's the tongue.
17         Q.    Okay.
18         A.    That's clearly the tongue.
19         Q.    And in the picture that I showed you,
20    although it's black-and-white --
21         A.    Uh-huh.
22         Q.    -- what color is that?
23                    MR. SHOTLAND:  Is it black or
24         white?
```

1    BY MR. McDERMOTT:

2         Q.    Is it black or white?

3         A.    Oh, okay.  It's a mixture of white, grey.

4         Q.    Is it red?

5         A.    It's black-and-white photo, so, no.

6         Q.    What, if any, evidence did you recover from

7    my client that would tie him to this robbery?

8         A.    I didn't recover anything from him.

9         Q.    Okay.  You didn't search him?

10        A.    I don't recall if it was me or Berkery --

11        Q.    All right.

12        A.    -- but I'm not -- I didn't recover anything

13   from your client.

14        Q.    Did you have any conversation with my

15   client about getting receipts out of the -- out of

16   his vehicle for either PNC Bank or Dunkin' Donuts?

17        A.    I don't recall any -- his car looked

18   like -- there was paper all over the vehicle.  It

19   looked like if I would have pulled up on it without

20   anybody in it, I would have thought it was abandoned.

21        Q.    Do you recall asking him for -- I'm sorry.

22   Do you recall him asking you or Officer Berkery to

23   look into the car for that?

24        A.    I don't recall.

SERGEANT EDWARD PISAREK

1                    MR. McDERMOTT:  All right.  I

2          have no other questions.

3                    MR. SHOTLAND:  I don't have any

4          questions for you.

5     BY MR. McDERMOTT:

6          Q.    Hold on one second.  Hold on.  I have a

7     couple more questions.

8                    Do you recall whether my client was in

9     handcuffs when he was identified?

10         A.    I don't recall.

11         Q.    Do you recall running my client on the

12    computer with his information in the car to determine

13    what his background was?

14         A.    That's quite possible, but I don't recall

15    doing that.

16         Q.    Is that something you generally do?

17         A.    We always run whoever we stop.

18         Q.    Okay.  Do you recall running him and seeing

19    that he had a prior robbery conviction?

20         A.    I don't recall.

21         Q.    And you never went to the store in this

22    matter?

23         A.    I didn't go to the store, I don't believe

24    so, no.

**SERGEANT EDWARD PISAREK**

1                  MR. McDERMOTT:  Okay.  I have

2      no other questions.

3                  (Discussion held off the

4  record.)

5                  MR. McDERMOTT:  For purposes of

6      the record, can we agree that I gave you

7      a copy of the video surveillance from the

8      store?

9                  MR. SHOTLAND:  Yes.

10                 MR. McDERMOTT:  And that you

11     showed it to Sergeant Pisarek and

12     Detective Scott before the deposition?

13                MR. SHOTLAND:  They saw it very

14     briefly.

15                MR. McDERMOTT:  Okay.  But they

16     saw it, and we can put a copy of that in

17     as an exhibit with this deposition?

18               MR. SHOTLAND:  Sure.

19               MR. McDERMOTT:  Okay.

20               MR. SHOTLAND:  Well --

21               MR. McDERMOTT:  You have it.

22               MR. SHOTLAND:  It wasn't

23     referred to in the deposition, so what's

24     the point of putting -- I can go get it.

**SERGEANT EDWARD PISAREK**

| | |
|---|---|
| 1 | MR. McDERMOTT: It was referred |
| 2 | to a lot. I asked them whether they saw |
| 3 | it before, I asked whether the sneakers |
| 4 | matched it and stuff. |
| 5 | MR. SHOTLAND: The video is |
| 6 | going to come in at trial. |
| 7 | MR. McDERMOTT: For purposes of |
| 8 | whatever motions we have. |
| 9 | MR. SHOTLAND: It's been turned |
| 10 | over and they saw it. |
| 11 | MR. McDERMOTT: Okay. And we |
| 12 | can -- can we make that an attachment to |
| 13 | this deposition or agree that you have a |
| 14 | copy of that and we can use it for |
| 15 | purposes of whatever paperwork we have? |
| 16 | MR. SHOTLAND: Yes. The |
| 17 | video's part of the case. |
| 18 | (Deposition concluded at |
| 19 | 2:23 p.m.) |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |

**SERGEANT EDWARD PISAREK**

1                          CERTIFICATION

2                            - - -

3              I hereby certify that the testimony and the

4     proceedings in the aforegoing matter are contained

5     fully and accurately in the stenographic notes taken

6     by me, and that the copy is a true and correct

7     transcript of the same.

8

9

10

11

12          _Andrea M. Brinton_
      _____

13

14          Andrea M. Brinton, Certified
            Court Reporter and Notary Public

15

16

17

18

19              The foregoing certification does not apply

20    to any reproduction of the same by any means, unless

21    under the direct control and/or supervision of the

22    certifying reporter.

23

24

# LAWYER'S NOTES

| Page | Line | |
|------|------|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**A**

AARON 2:6
abandoned 17:20
accurately 21:5
ACTION 1:4
actions 9:5
actual 11:12
adamant 11:3
admitted 13:13
aforegoing 21:4
afternoon 4:14,15
ago 13:23 14:1
agree 19:6 20:13
agreement 4:2
al 1:7
and/or 21:21
Andrea 1:16 21:13
answer 13:11
anybody 17:20
APPEARANCES 2:1
appears 16:13
apply 21:19
April 1:15
Arch 1:14 2:7
area 6:2 9:4 10:12
   10:20 12:5
arrest 4:19 10:9
arresting 10:1,3
arrival 10:22
arriving 10:24
Asian 11:2
asked 20:2,3
asking 8:7 16:6
   17:21,22
attachment 20:12
avoid 9:5

**B**

B 3:8
back 11:2,13
background 18:13
Bank 17:16
basically 9:21
believe 8:17 9:11
   9:19 18:23
Berkery 5:1,1 6:18
   9:19 10:7 17:10
   17:22
big 14:9
black 14:3 16:23
   17:2
black-and-white
   16:20 17:5
block 5:24
boxes 6:20
breathing 9:16

briefly 5:14 19:14
Brinton 1:17 21:13
broad 8:6
brought 10:21
   11:17
Building 1:14
business 10:6

**C**

CAD 13:12,13
car 7:21,22 9:18
   17:17,23 18:12
case 12:1 20:17
certification 4:3
   21:1,19
Certified 1:17,21
   21:13
certify 21:3
certifying 21:22
City 1:7,13 2:6 12:7
CIVIL 1:4
clearly 13:12 16:18
client 4:18 5:20
   10:14 11:5 13:18
   17:7,13,15 18:8
   18:11
close 5:7
closed 7:22
coat 8:10
Collins 1:4 2:11
   4:18
Collins-1 3:12
   13:17 14:23 16:15
color 8:1 14:5 16:22
color's 14:6
come 10:10 20:6
coming 5:5
commencing 1:16
complainant 10:21
   10:23 11:1,16
computer 18:12
concluded 20:18
contact 9:20
contained 21:4
control 21:21
conversation 17:14
conviction 18:19
copy 19:7,16 20:14
   21:6
corner 6:4 8:18
correct 6:7 8:21,24
   10:7 11:21,23
   15:20 21:6
counsel 2:5,9 4:2
couple 18:7
course 13:7
Court 1:1,17,21,21

21:14
cross 6:2

**D**

D 3:1
date 8:19
decided 9:6
Defendants 1:8 2:9
definitely 11:8
department 1:13
   2:6 12:8
deposition 1:12
   19:12,17,23 20:13
   20:18
description 3:10
   9:3
detective 12:14
   13:13 19:12
detectives 13:14
determine 18:12
different 11:4
dipped 6:5 7:21
   8:13
dipping 9:5
direct 21:21
discovery 12:4,6,21
   13:1,6,10
Discussion 19:3
DISTRICT 1:1,1
documents 10:9
doing 6:3 18:15
Donuts 17:16
door 7:22
drive 9:10
driving 5:17
drove 8:2
ducked 6:5
Dunkin' 17:16

**E**

E 3:1,8
earlier 13:22
EASTERN 1:1
EDWARD 1:12 3:3
   4:7
either 17:16
entire 12:3
ESQUIRE 2:2,6
et 1:7
evidence 12:10,20
   17:6
exactly 6:24
EXAMINATION 3:4
   4:11
examined 4:8
exhibit 3:10 19:17
Exhibits 3:11

exited 9:13

**F**

fact 7:15
familiar 13:6
far 10:9
female 11:2
filing 4:3
fill 7:14
filled 7:10,12
film 13:21
FIRST 3:9
flash 9:2
Fleming 1:23
Floor 1:14 2:8
following 9:24 10:5
follows 4:9
foregoing 21:19
form 4:4
front 14:22
fully 21:5
fur 14:10
furthermore 12:9

**G**

generally 18:16
getting 17:15
give 9:23
go 10:6 12:5 18:23
   19:24
going 20:6
good 4:14,15 14:6
grey 14:11 17:3
guess 11:12

**H**

H 3:8
half 13:23 14:1
Hammonton 1:23
handcuff 11:11
handcuffs 11:10
   18:9
happened 5:13,16
   10:17
heavily 9:16
held 19:3
Hold 16:7 18:6,6
hoodie 14:8,11
hour 13:23 14:1

**I**

ID 11:12
identical 15:3
identification 10:18
identifications 13:9
identified 10:15
   18:9

identify 11:17
IDs 10:23 12:5,10
   12:13
including 10:20
indicate 11:15
information 9:2
   10:8 11:19 18:12
infraction 7:7
inside 6:6 7:17
interview 9:24
investigation 9:7
   12:11,12 13:8
involved 4:19

**J**

jacket 14:4,6,9
Jersey 1:23

**K**

kind 8:10
know 5:2,4,5 6:15
   8:3 12:4,19,21,23
   13:11,14

**L**

Law 1:13 2:2,6
leave 10:6,12
lightish 16:14
lights 8:14
location 10:21,22
   10:24
look 13:17 17:23
looked 17:17,19
lot 20:2

**M**

M 1:16 21:13
making 4:17
male 9:3,10
March 8:19,20
marked 3:11 5:10
   6:9,23 7:2 13:17
match 14:23
matched 9:2 20:4
matter 18:22 21:4
McDERMOTT 2:2,2
   3:5 4:13 13:4
   15:16 16:1,12
   17:1 18:1,5 19:1,5
   19:10,15,19,21
   20:1,7,11
means 21:20
memory 15:13
Michael 2:2,2 5:1
mixture 17:3
motions 20:8
motor 7:1

moving 7:4,16

**N**

N 3:1
needed 10:8
negative 10:23 12:5
  12:10,13 13:9
never 13:15 18:21
New 1:23
night 4:22 8:16
  13:19
Notary 1:17 21:14
notes 21:5
noticed 9:16

**O**

Oakmont 5:23,24
Objection 13:2
objections 4:4
obviously 9:21
  13:20
occurrence 8:20
officer 5:1 9:19,21
  10:1,3,7 11:1
  17:22
OFFICES 2:2
Oh 17:3
okay 4:21 5:3,8,15
  5:20 6:6,8,12,15
  6:19 7:1,15,22 8:1
  8:4,10,14,16,23
  9:1,14,17,23
  10:14 12:16,24
  14:2 16:17 17:3,9
  18:18 19:1,15,19
  20:11
opened 7:23
opinion 14:21
Oral 1:12
overtime 4:17

**P**

p.m 1:16 8:20 20:19
package 12:3
PAGE 3:2,9
pants 8:2,8
paper 11:22 17:18
  20:15
paperwork 11:15
  20:15
parka 14:9,13
parked 6:4
Parkway 1:14 2:7
part 12:3 15:18
  20:17
partner 4:21,23
partners 5:12
pedestrian 6:23 7:2

7:8 9:6
Pennsylvania 1:1
  1:15,22 2:4,8
people 10:19
perpetrator 14:3
person 6:13 14:2
pertaining 10:9
pertinent 11:19
Philadelphia 1:7,13
  1:15,22 2:4,6,8
  7:10 12:8,24 13:5
photo 17:5
Photocopy 3:12,13
Photograph 3:12
  3:13
picture 14:22 16:19
piece 11:22
Pike 1:23
Pisarek 1:12 3:3 4:7
  19:11
place 9:5
Plaintiff 1:5 2:5
play 15:11
please 9:9
PNC 17:16
point 9:21 12:11
  19:24
pointing 15:22 16:5
  16:7,8,13
police 5:10 7:10
  11:15 12:8,24
  13:5
policy 12:24 13:14
positive 11:12
possible 18:14
prepare 6:14 10:8
prepared 6:10,13
  6:18 10:8
preparing 13:6
PRESENT 2:10
previously 3:11 4:8
prior 18:19
procedure 7:11
  13:5
proceedings 21:4
proximity 9:4
Public 1:17 21:14
pull 13:12
pulled 17:19
purposes 19:5 20:7
  20:15
put 12:9,14 19:16
putting 4:16 19:24

**Q**

question 4:5 8:6
  16:11

questions 18:2,4,7
  19:2
quite 6:1 18:14

**R**

reading 4:2
reason 5:10
recall 4:19 5:18,19
  5:20 7:24 8:4,5,7
  8:9,15 10:13 11:6
  11:11 13:16,18
  17:10,17,21,22,24
  18:8,10,11,14,18
  18:20
receipts 17:15
recognize 6:9
record 19:4,6
recover 17:6,8,12
red 15:20 16:3,14
  17:4
reference 9:7 11:18
  12:2
REFERENCED 3:10
referred 19:23 20:1
regard 4:18
remember 13:19
report 6:16,17 7:9
  9:24
reporter 1:17 21:14
  21:22
Reporters 1:21
REPORTING 1:21
reproduction 21:20
reserved 4:5
responded 5:6
Richard 1:4 2:11
ride 4:23
right 5:12,24 6:17
  8:16,21,23 9:12
  13:6 17:11 18:1
robbery 9:4,7 14:3
  17:7 18:19
run 18:17
running 7:3 18:11
  18:18

**S**

S 3:8
saw 5:22 6:3 9:1
  19:13,16 20:2,10
saying 6:12 16:14
says 6:17,17,21
  8:19 15:21
scene 9:22 10:2
Scott 14:22 19:12
Scott-3 3:13 15:17
  16:13

Scott-5 6:9,9
sealing 4:3
search 17:9
second 16:5 18:6
see 8:1,8,10,12
  9:10 11:17 13:21
  14:8,18 15:17
seeing 5:20 13:18
  18:18
Sergeant 1:12 3:3
  4:7,14 19:11
Seventy 5:23
Sheffield 6:1
Shotland 2:6 13:2
  13:22 15:12,22
  16:10,23 18:3
  19:9,13,18,20,22
  20:5,9,16
shoulders 8:12
show 6:8,19 15:19
showed 16:19
  19:11
shows 15:20,21
sidewalk 7:20
signing 4:3
similar 14:24
sir 10:4 12:20,23
slipping 9:11
sneaker 15:17,18
  15:19,23 16:2
sneakers 13:18,19
  14:19,21,23,24
  15:4 20:3
sole 16:8
soles 15:5,7
sorry 13:16,24
  14:22 17:21
specific 9:9
specifically 12:17
standing 7:18 11:9
  11:13
started 11:3
state 6:16
STATES 1:1
stenographic 21:5
stepped 11:2
stop 6:11,21 7:5,6
  9:12 11:23 12:2
  12:17 18:17
stopped 7:7 10:19
  11:16 12:2,9
store 18:21,23 19:8
street 1:14,22 2:3,7
  10:10,10
streetlights 8:18
streets 6:2
stuff 20:4

Suite 1:22 2:3
SUMMIT 1:21
supervision 21:21
supervisor 4:24
  9:22 10:6,11
supplied 13:22
supposed 13:1,9
sure 6:1 16:4 19:18
surveillance 13:21
  19:7
suspects 11:16
sworn 4:8

**T**

T 3:8
Take 13:17
taken 1:13 21:5
tell 5:6 10:17 11:1,9
  12:23 14:5,11,15
  14:16,18 15:24
  16:3
testified 4:8
testimony 21:3
Thank 4:16
thing 12:4
thought 17:20
three 15:11,14
Thursday 1:15
tie 17:7
time 4:5,24 8:19 9:2
  9:15 11:8
times 15:9,10,11,15
today 13:22
tongue 15:23 16:2
  16:15,16,18
top 6:20
Torresdale 5:23,24
track 12:8
transcript 21:7
trial 4:5 20:6
true 21:6
trying 9:5
turned 20:9
Two 15:11,14
type 6:21 7:5,7 9:23

**U**

Uh-huh 6:22 16:21
Underneath 14:13
understand 16:6
understanding 7:9
unit 5:11
UNITED 1:1
use 20:14

**V**

vehicle 5:1,4,9,13

**SERGEANT EDWARD PISAREK**

5:17 6:5,6 7:1,3,4
7:4,16,17 8:13,14
8:22,23 9:6,12,13
11:3,7,9,14 17:16
17:18
**vehicular** 7:5,6,7
**video** 14:2,7,23
15:1,2,4,9 19:7
20:5
**video's** 20:17
**Videographers**
1:21
**vs** 1:6

### W

**Wait** 16:5,10
**waiting** 10:20
**waived** 4:4
**walked** 9:15
**Walnut** 1:22
**want** 6:1,8
**wanted** 6:19
**wasn't** 5:12 7:16,17
7:20 10:1 19:22
**watch** 15:9
**watched** 15:1
**way** 7:10,13,14 12:7
**wearing** 8:11 13:20
**well-lit** 8:17
**went** 10:7,9 18:21
**weren't** 5:12
**white** 9:3,10 15:4,7
16:24 17:2,3
**Winter** 2:3
**WITNESS** 3:2 15:10
15:14,24
**working** 4:21
**wouldn't** 11:11 12:5
**www.summitrep...**
1:24

### X

**X** 3:1,8

### Y

**Yeah** 14:9,14 16:2
**yelling** 11:4

### Z

### 0

**08037** 1:23

### 1

**1026** 2:3
**13** 1:15 3:12
**14th** 1:14 2:8

**15** 3:13
**1500** 1:22
**1515** 1:14 2:7
**16-5671** 1:8
**1610** 1:22
**19102** 1:22 2:8
**19107** 2:4

### 2

**2:10** 1:16
**2:23** 20:19
**200** 2:3
**2013** 8:20
**2017** 1:16
**215** 1:23 2:4,9
**23rd** 8:20

### 3

### 4

**4** 3:5
**424** 1:23
**477-8648** 1:23
**48A** 12:17
**49** 12:15

### 5

**567-3315** 1:23

### 6

**609** 1:23
**683-5000** 2:9

### 7

**7:55** 8:20
**75-48A** 6:10
**7500** 5:23

### 8

**800** 1:23

### 9

**925-9732** 2:4
**985-2400** 1:23

**SUMMIT COURT REPORTING, INC.**
**215.985.2400 * 609.567.3315 * 800.447.8648 * www.summitreporting.com**



